United States District Court
For the District of Massachusetts

| | |
|---|---|
| Samsonite Corporation and Samsonite Company Stores, Inc., <br> *Plaintiffs*, <br><br> v. <br><br> Paul Ouellette, Robert Farone, and Travelpro International of South Florida, Inc., <br> *Defendants*. | Civil Action No. 2007-CV_____ |

# Verified Complaint

## Nature of the Action

1. In this action, Samsonite Corporation and its wholly owned subsidiary, Samsonite Company Stores, Inc., seek injunctive relief and damages against former employees Paul Ouellette and Robert Farone and their new employer, Travelpro, arising from the breach of and interference with a noncompetition agreement between Samsonite and Ouellette and Farone. Travelpro is a direct competitor of Samsonite. Samsonite seeks similar relief and damages for the defendants' misappropriation of Samsonite's trade secrets and other confidential information concerning its retail outlet stores and its products.

2. Samsonite Corporation operates its retail business in the United States through its wholly owned subsidiary, Samsonite Company Stores, Inc. For purposes of this action, Samsonite Corporation and Samsonite Company Stores, Inc. will be used and referred to interchangeably as "Samsonite."

3. As the vice president of store development for Samsonite for the past 22 years, Ouellette was actively involved in the design and development of Samsonite's outlet stores.

As the vice president and general manager of Samsonite Company Stores, Inc. for approximately five years, Farone was also actively involved in Samsonite's corporate strategies, new product designs, product pricing, and the profit margins of each retail store. By using Samsonite's trade secrets and confidential information that Ouellette and Farone obtained during their employment at Samsonite, Travelpro accelerated and improved its retail expansion efforts, saved valuable time in its speed to market, and co-opted the unique design of Samsonite's retail locations. Samsonite has been and continues to be harmed by the defendants' misuse of its confidential information and trade secrets.

    4.    Samsonite notified Travelpro that Ouellette's and Farone's employment violated their noncompetition agreements in a letter dated June 8, 2007 (attached as Exhibit A). Travelpro, however, has continued to allow Ouellette and Farone to use Samsonite's confidential information and trade secrets for its benefit. This action seeks to prevent Travelpro from gaining an unfair advantage in the marketplace by employing Ouellette and Farone in violation of their noncompetition agreements with Samsonite.

## Parties, Jurisdiction, and Venue

    5.    Samsonite Corporation is a Delaware corporation with a principal place of business at 575 West Street, Mansfield, Norfolk County, Massachusetts. Samsonite Company Stores, Inc. is an Indiana corporation with a principal place of business at 575 West Street, Mansfield, Norfolk County, Massachusetts.

    6.    Upon information and belief, Travelpro is a Florida corporation with a principal place of business at 700 Banyan Trail, Boca Raton, Palm Beach County, Florida.

7. Upon information and belief, Paul Ouellette resides at 316 Common Fence Blvd., Portsmouth, Newport County, Rhode Island.

8. Upon information and belief, Bob Farone resides at 10560 Creekmere Drive, Dallas, Dallas County, Texas.

9. Jurisdiction in this Court is proper pursuant to 28 U.S.C. Sec. 1332(a)(1) because the parties are citizens of different states and the amount in controversy exceeds $75,000.

10. Venue in this Court is proper because Samsonite is headquartered in Mansfield, Massachusetts.

## Factual Allegations

11. Samsonite is one of the world's largest manufacturers and distributors of luggage. It markets luggage, casual bags, business cases and travel-related products under brands such as SAMSONITE® Black Label, LAMBERTSON TRUEX®, SAMSONITE®, AMERICAN TOURISTER®, LACOSTE® and TIMBERLAND®.

12. Travelpro manufactures and distributes luggage products, and is a competitor of Samsonite. Travelpro has only recently begun to make a move into the retail outlet industry. Prior to hiring Ouellette and Farone, Travelpro had no retail outlet stores. Just a few months after hiring Ouellette and Farone, Travelpro opened its first outlet store and has two others near completion. Travelpro utilized fixtures and schematic designs in its new outlet stores that are similar to Samsonite's. And Ouellette used the same architect, general contractor, and fixtures manufacturer that he previously used with Samsonite to build out Travelpro's stores.

## Ouellette's Employment at Samsonite

13. Ouellette was hired by Samsonite in 1984 to work as a store manager in Portsmouth, New Hampshire. In 1992, he became the manager of real estate and store development. In 1998, he became the vice president of store development. In this position, Ouellette was responsible for the location, design, and development of all of Samsonite's outlet stores in the United States. Ouellette also negotiated the lease terms for Samsonite's outlet stores. He has detailed knowledge of the lease agreements, including the negotiated price per square foot of the retail space and the length of the leases. In addition, Ouellette is familiar with the location of Samsonite's profitable outlet stores as well as locations that didn't generate an acceptable profit margin. This information would be extremely valuable to Travelpro in choosing an outlet store's location.

14. Over the last several years, Samsonite worked closely with its architectural firm, BKA, on the development of a new store concept for Samsonite's outlet stores. Samsonite wanted something more sophisticated and interesting than its previous store prototype. Samsonite spent a great deal of time, money, and energy to update its outlet store concept. The new concept is fresh and utilizes different lighting, fixtures, carpet, colors, and store layout than its previous stores. As vice president of store development, it was Ouellette's responsibility to create the new store concept for Samsonite.

15. Throughout his tenure with Samsonite, Ouellette worked closely with Samsonite's architectural firm BKA and the general contractor, Ron Dalare, in designing and building the outlet stores. In developing its new store concept, Ouellette was well versed in the types of fixtures that Samsonite used, such as shelving, display cubes, and wingwalls to hang luggage from. His involvement in developing the new store concept, as well as his

specialized knowledge of Samsonite's previous outlet-store designs, could shave months off of the total time it takes Travelpro to design and open a new outlet store.

16. In his senior management position, Ouellette was also privy to confidential information regarding Samsonite's marketing and product-development plans, the company's financials, and how well certain luggage series, store concepts, and other products were doing. This information is very valuable to Travelpro as it looks to position itself more aggressively in the outlet store market.

### Farone's Employment at Samsonite

17. Farone was hired by Samsonite in June 2001 as the vice president and general manager of Samsonite Company Stores, Inc. In this position, Farone was actively involved in Samsonite's product development, including new luggage designs. He was privy to the retail pricing of Samsonite's products and the cost margins on certain luggage series. Farone is also knowledgeable about which Samsonite products were the best outlet sellers and in what locations these products generated revenue.

18. Farone attended global-marketing meetings where he received detailed information regarding Samsonite's current and future marketing strategies as well as the Company's roadmaps for future growth in both retail and full-priced stores. He was privy to detailed and confidential information about the Samsonite Black Label store concept as well as its new outlet store concept.

### Ouellette's and Farone's Noncompetition Agreement with Samsonite

19. During the course of his employment with Samsonite, Ouellette signed at least three stock option agreements containing noncompetition and nondisclosure provisions.

5

Each of these stock option agreements contained identical provisions. On April 5, 2001, Ouellette entered into a stock option agreement that included a noncompete and confidentiality provision (attached as Exhibit B). Ouellette signed the agreement in consideration for Samsonite's stock options.

20. During the course of his employment with Samsonite, Farone signed at least two stock option agreements containing noncompetition and nondisclosure provisions. Each of these stock option agreements contained identical provisions. On June 22, 2001, Farone entered into a stock option agreement that included a noncompete and confidentiality provision (attached as exhibit C). Farone signed the agreement in consideration for Samsonite's stock options.

21. Section 8(a) of the agreements signed by Ouellette and Farone contains a noncompetition provision under which Ouellette and Farone agreed that for one year following the termination of their employment, they will not "directly or indirectly, as a principal, officer, director, employee or in any other capacity whatsoever, without prior written consent of the Company, engage in any activity with, or provide services to, any person or entity engaged in, or about to engage in, any business activity that is competitive with the business then engaged in by the Company...."

22. Section 8(b) of the agreements signed by Ouellette and Farone contains a confidentiality provision under which Ouellette and Farone agreed that they shall retain in confidence all "'know how', trade secrets, customer lists, pricing policies, operational methods, technical processes, formulae, inventions and research projects and other business affairs of the Company learned by the Employee." Ouellette and Farone also agreed to "not disclose them [confidential information] to anyone outside of the Company, either during or

6

after the Employee's employment with the Company, except in the course of performing the Employee's duties as an employee of the Company or with the Company's express written consent."

23. Section 8(c) of the agreements signed by Ouellette and Farone contains a provision under which Ouellette and Farone agreed that Samsonite would be entitled to an injunction if they breached or proposed to breach their noncompete agreements.

24. Samsonite takes numerous precautions to ensure that confidential and sensitive company information stays secret and is not distributed to the public at large or others outside the company. Samsonite's computer systems are equipped with security features to prevent persons outside the Company from accessing Samsonite's confidential information. Samsonite limits dissemination of trade secrets and confidential information to those within the Company who have a need to know about such information. And Samsonite requires its senior-management employees, such as Ouellette and Farone, to sign stock option agreements that contain nondisclosure and noncompetition provisions in order to receive stock options, which are an important element of executive compensation.

## Ouellette Informs Samsonite That He's Leaving

25. In late January or early February 2007, Ouellette told his superiors that he was leaving Samsonite and that he had decided to become a commercial real estate broker, with a focus in southern New England.

26. Over the next week or so, Ouellette's superiors, up to and including the CEO, spoke with him and encouraged him to reconsider.

27.     Ouellette informed Samsonite that his decision was final and that his last day would be February 16, 2007.

## Samsonite Discovers Ouellette is Working for Travelpro

28.     On May 7, Rob Cooper, Samsonite's vice president of store operations, was flying to Las Vegas for a conference. While Cooper was in line for the flight, Ouellette approached him and said, "I guess you've heard I'm working for Travelpro." On the flight, Ouellette also informed Cooper that Travelpro was planning to open outlet stores.

29.     After Cooper returned from the Las Vegas conference, he found out from Bill McLaughlin, the East Regional Director of Stores, that Samsonite's general contractor, Dalare, was working with Ouellette to build Travelpro's outlet stores. Cooper also learned that Samsonite's architecture firm, BKA, was working with Ouellette to design Travelpro's outlet stores.

30.     In June, BKA sent Samsonite a copy of the build out plans for a Samsonite outlet store in Florida. The plans had Travelpro's name on them and contained many of the design features of a Samsonite store indicating that Ouellette has misappropriated highly confidential and proprietary information regarding Samsonite's outlet store design.

31.     Samsonite has learned that Travelpro's outlet store is near completion and will be opening soon in the Lake Buena Vista outlet mall, located in Orlando, Florida. Samsonite has an outlet store at this mall just a few stores away from Travelpro's new store. In addition, Travelpro has opened a store in Foley, Alabama in the same outlet center that Samsonite is currently operating a store.

## Samsonite Discovers Farone is Working for Travelpro

32. Farone's employment with Samsonite ended on January 12, 2007.

33. In late May, Samsonite learned through its general contractor, Dalare, that Farone was also working for Travelpro.

34. Samsonite later confirmed that Farone is in fact working for Travelpro.

35. Considering the highly confidential and proprietary information that Farone was privy to while working for Samsonite, it is impossible for him not to share or use this information in his new position.

## Count I
## Breach of Contract (Against Ouellette and Farone)

36. Samsonite restates and incorporates by reference the allegations contained in the Paragraphs above.

37. By accepting employment with and going to work for Travelpro, Ouellette has breached his obligations to Samsonite under his nondisclosure and noncompete agreement.

38. Ouellette's breach of his contractual obligations has resulted in an immediate threat of irreparable harm and damages to Samsonite.

39. By accepting employment with and going to work for Travelpro, Farone has breached his obligations to Samsonite under his nondisclosure and noncompete agreement.

40. Farone's breach of his contractual obligations has resulted in an immediate threat of irreparable harm and damages to Samsonite.

## Count II
## Misappropriation of Trade Secrets and
## Confidential Information (Against All Defendants)

41. Samsonite restates and incorporates by reference the allegations contained in the Paragraphs above.

42. As a result of the trust Samsonite placed in Ouellette in his role as the vice president and general manager of store development, Ouellette has trade secrets and other confidential information belonging to Samsonite.

43. In the course of Ouellette's employment with Travelpro, he will be unable to avoid disclosing to Travelpro or others certain of Samsonite's trade secrets and confidential information, including but not limited to architectural-design specifications for the outlet stores, specialized fixtures, product strengths and weaknesses, and confidential financial information and confidential leasing information. Through its employment of Ouellette, Travelpro is improperly using Samsonite's trade secrets and confidential information to its benefit and to the detriment of Samsonite.

44. As a result of the trust Samsonite placed in Farone in his role as the vice president and general manager of Samsonite Company Stores, Farone has trade secrets and other confidential information belonging to Samsonite.

45. In the course of Farone's employment with Travelpro, he will be unable to avoid disclosing to Travelpro or others Samsonite's trade secrets and confidential information, including but not limited to product strengths and weaknesses, and confidential financial information about the outlet stores, as well as the overall corporate strategy and various marketing schemes. Through its employment of Farone, Travelpro is

improperly using Samsonite's trade secrets and confidential information to its benefit and to the detriment of Samsonite.

46. During their employment with Travelpro, Ouellette and Farone will be unable to avoid using certain of Samsonite's trade secrets and confidential information in violation of common law and Mass. Gen. Laws. ch. 93, §§ 42 and 42A.

47. Samsonite has and will continue to suffer substantial, immediate, and irreparable harm and damages unless Ouellette, Farone, and Travelpro are enjoined from disclosing and using such trade secrets and confidential business information.

## Count III
## Intentional Interference with Contractual Relations (Against Travelpro)

48. Samsonite restates and incorporates by reference the allegations contained in the Paragraphs above.

49. Samsonite has a contractual relationship with its former employees Ouellette and Farone.

50. Samsonite informed Travelpro of this relationship in a letter dated June 8, 2007. Despite this knowledge, Travelpro has continued to interfere with the contractual relationships by employing Ouellette and Farone.

51. This interference is intentional, malicious, and without lawful justification, and Travelpro is acting out of improper motive and employing improper means.

52. Samsonite will suffer actual pecuniary harm as a direct result of Travelpro's interference with its contractual relationships with Ouellette and Farone.

## Prayer for Relief

Samsonite respectfully seeks the following relief from this Court:

1. After hearing, issue a preliminary injunction enjoining Ouellette and Farone from working for Travelpro or any other competitor of Samsonite for one year. Further, enjoin Ouellette and Farone from using or disclosing any and all of Samsonite's trade secrets and confidential information that they may possess, and from otherwise violating the terms of their noncompete agreements;

2. After hearing, issue a preliminary injunction enjoining Travelpro from employing Ouellette, Farone, or any other Samsonite employee in violation of their noncompete agreement with Samsonite;

3. After hearing, issue a preliminary injunction enjoining Travelpro from conducting business in a manner that misappropriates Samsonite's customer goodwill or trade secrets and confidential information or from otherwise using or disclosing any and all of Samsonite's trade secrets and confidential information that it may possess.

4. After trial, issue a permanent injunction in the form set out in the preceding paragraphs, and award Samsonite double its damages, plus costs, attorneys' fees, and interest.

5. Award such additional relief as the Court deems just and proper, including requiring Travelpro, Ouellette, and Farone to provide an equitable accounting of all profits and other benefits gained as a result of the unlawful conduct complained of herein.

## Request for Jury Trial

The plaintiff requests a trial by jury on all claims so triable.

Respectfully submitted,

Samsonite Corporation and Samsonite Company Stores, Inc.,

By their attorneys,

/s/ Sarah N. Turner
_____
Jay Shepherd (BBO# 567844)
Michael R. Bertoncini (BBO# 633720)
Sarah N. Turner (BBO# 664488)
Shepherd Law Group, P.C.
One Beacon Street, Sixteenth Floor
Boston, MA 02108
Telephone: 617.439.4200
Facsimile: 617.439.4207

Dated: July 20, 2007

United States District Court
For the District of Massachusetts

| | |
|---|---|
| Samsonite Corporation and Samsonite Company Stores, Inc., *Plaintiffs*, <br><br> v. <br><br> Paul Ouellette, Robert Farone, and Travelpro International of South Florida, Inc., *Defendants*. | Civil Action No. 2007–CV-_____ |

## Samsonite Corporation's Corporate Disclosure Statement

Plaintiff Samsonite Corporation states that it is a Delaware Corporation. Its corporate headquarters are located at 575 West Street, Mansfield, MA 02048. It has no parent company and no publicly held company owns 10% or more of its stock.

Respectfully submitted,

Samsonite Corporation,

By its attorneys,

/s/ Sarah N. Turner
_____
Jay Shepherd (BBO# 567844)
Michael R. Bertoncini (BBO# 633720)
Sarah N. Turner (BBO# 664488)
Shepherd Law Group, P.C.
One Beacon Street, Sixteenth Floor
Boston, MA 02108
Telephone: 617.439.4200
Facsimile: 617.439.4207

Dated: July 20, 2007

United States District Court
For the District of Massachusetts

| | |
|---|---|
| Samsonite Corporation and Samsonite Company Stores, Inc., *Plaintiffs*, v. Paul Ouellette, Robert Farone, and Travelpro International of South Florida, Inc., *Defendants*. | Civil Action No. 2007-CV-_____ |

## Samsonite Company Stores, Inc.'s Corporate Disclosure Statement

Plaintiff Samsonite Company Stores, Inc. states that it is an Indiana Corporation. Its corporate headquarters are located at 575 West Street, Mansfield, MA 02048. Its parent company is Samsonite Corporation and no publicly held company, other than Samsonite Corporation, owns 10% or more of its stock.

Respectfully submitted,

Samsonite Company Stores, Inc.,

By its attorneys,

/s/ Sarah N. Turner

---

Jay Shepherd (BBO# 567844)
Michael R. Bertoncini (BBO# 633720)
Sarah N. Turner (BBO# 664488)
Shepherd Law Group, P.C.
One Beacon Street, Sixteenth Floor
Boston, MA 02108
Telephone: 617.439.4200
Facsimile: 617.439.4207

Dated: July 20, 2000

## Verification

I, Robert Cooper, state the following:

1. I am Vice President of Store Operations of Samsonite Company Stores, Inc.

2. I have read this Verified Complaint and state that the allegations of fact are based on my personal knowledge and are true, except for the allegations that are based on information and belief, which I believe to be true.

Signed under pains and penalties of perjury this 18 day of July 2007.

Robert Cooper